IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

MOSES TREJO, Guardian of Estate of
ALFONSO TREJO, a disabled person                                    PLAINTIFF

VERSUS                                        CIVIL ACTION NO. 2:08cv257KS-MTP

ALTER SCRAP METAL, INC.;ALTER TRADING
CORPORATION d/b/a ALTER METAL RECYCLING;
EAST SIXTH STREET COMPANY, LLC;
PRECISION WELDING AND POWER WASHING; And
COMMERCE AND INDUSTRY INSURANCE COMPANY               DEFENDANTS

VERSUS

PRECISION WELDING AND POWER WASHING           THIRD-PARTY DEFENDANT


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to for Summary Judgment **[#110]** filed on behalf of the plaintiff and on a Motion to Dismiss the Second Amended Complaint **[#117]** filed on behalf of defendant Commerce and Industry Insurance Company. The court, having reviewed the motions, the responses, the pleadings and exhibits on file, the briefs of counsel, the authorities cited, and being otherwise fully advised in the premises finds that the plaintiff's Motion for Summary Judgment should be granted and that the defendant Commerce and Industry's Motion to Dismiss should be denied. The court specifically finds as follows:


## FACTUAL BACKGROUND

On July 17, 2006, Precision Welding, Inc. ("Precision") entered into an

Independent Contractor Agreement ("Agreement") with Alter Trading Corporation ("Alter"). Pursuant to Section 12 of the Agreement, Precision was required to procure and maintain workers' compensation insurance with a minimum limit of $500,000 covering illness and injury to and death of its employees. Section 12 also required Precision to obtain from its workers' compensation underwriters a waiver of subrogation in favor of Alter.

In accordance with the Agreement, Precision procured a workers' compensation policy for Commerce and Industry Insurance Company ("C&I"), bearing Policy Number WC336-66-42 (the "Policy"). The Policy contained a waiver of subrogation clause in favor of Alter which stated:

> **WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT**
>
> We have the right to recover our payments from anyone liable for any injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.
>
> This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> Schedule
>
> ANY PERSON OR ORGANIZATION FOR WHOM YOU PERFORM WORK UNDER A WRITTEN CONTRACT THAT REQUIRES YOU TO OBTAIN THIS AGREEMENT FROM US.

Additionally, C&I issued a certificate of insurance identifying Alter as an additional insured under the Policy acknowledging that the "[w]aiver of subrogation applies to workers' compensation."

In May of 2007, Alfonso Trejo ("Trejo") was assigned by Precision to work on the

car crushing yard at Alter's Hattiesburg, Mississippi facility. Trejo was assigned to the Enviro Pack rack and was responsible for punching holes in fluid reservoirs and draining all fluids from scrap cars prior to the cars being placed in the car crusher. He also was required to inspect the vehicles for empty propane tanks and other hazards.

On the morning of July 11, 2007, Trejo was struck by a forklift causing extensive injuries to his head and upper torso. Trejo suffered brain damage and is paralyzed from the waist down. Trejo was initially treated at Forrest General Hospital in Hattiesburg for more than a month. On August 22, 2007, he was transferred to ResCare, a skilled nursing facility in suburban Chicago, Illinois. Trejo remains in that facility receiving daily skilled nursing care, therapy and personal support. Trejo's medical bills total more than $1,250,000.00 to this point.

Pursuant to the Mississippi Workers' Compensation Act, Trejo's employer Precision, through C&I, provided him with medical and compensation benefits. In March of 2008, Trejo, through his guardian, entered into a settlement agreement with C&I to settle the indemnity aspect of his claim. The medical benefits aspect remains open.

On June 25, 2008, this tort action was commenced in the United States District Court for the Central District of Illinois against Alter Scrap Metal, Inc., and Alter Trading Corporation d/b/a Alter Metal Recycling. The complaint alleged that the defendants and/or their employees acted negligently thereby proximately causing the plaintiff's injuries and damages from his July 11, 2007, work related injury.

On November 24, 2008, the case was transferred to this court. After extensive discovery and motion practice, a pretrial settlement conference was held before

Magistrate Judge Parker on November 18, 2009. The parties did not reach a settlement at the conference but continued to negotiate thereafter. On or about December 22, 2009, the parties reached a tentative settlement which provided that Alter would pay the sum of 4.5 million dollars contingent on a written acknowledgment and agreement from Precision's workers' compensation carrier, C&I, that: (a) any workers' compensation lien for past medical payments had been waived; and (b) the waiver of subrogation in favor of Alter contained in the Policy precluded C&I from seeking any credit or setoff against C&I's obligation to pay future medical benefits on behalf of Trejo.

On January 11, 2010, C&I's counsel sent a letter to Judge Parker advising the court that C&I was not asserting any lien as to past medical benefits paid but was asserting a right to a credit or setoff in the amount of the settlement against future medical benefits paid. Thus, C&I took the position that the waiver of subrogation clause did not preclude its entitlement to a setoff against future medical payments on behalf of Trejo. This position effectively prevented the settlement from being consummated.

On February 16, 2010, Trejo filed his Second Amended Complaint adding C&I as a party. The amended complaint added Count II, which is a declaratory judgment action against C&I regarding the claimed right of setoff against future medical payments on behalf of Trejo equal to the tort settlement with Alter.

On March 10, 2010, Trejo filed his motion for summary judgment asserting that the waiver of subrogation clause in the Policy waives not only benefits paid in the past, but also any entitlement to a credit of setoff for future benefits. C&I responded by filing a motion to dismiss the declaratory judgment action as unripe claiming that until a settlement is actually consummated and it (C&I) makes a claim for a setoff or credit,

-4-

there is no justiciable issue.  Alternatively, C&I argues that the court should abstain from hearing the declaratory action if the court determines not to dismiss it.   C&I also contends that, ultimately, the only proper forum for hearing the setoff issue is the Mississippi Workers' Compensation Commission, not this court.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); and *see Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue,

therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

C&I does not dispute that it has waived its subrogation rights as related to past compensation and medical benefits paid on behalf of Trejo. However, it does not agree that the waiver extends to its right to a setoff or credit against future liability for medical payments on behalf of Trejo. C&I first argues that since no settlement has been reached, and it has not made a claim for a setoff, the matter is not properly before the

-7-

court.

Trejo contends that C&I's argument lacks merit because, like any typical declaratory judgment action relating to coverage or interpretation of an insurance policy, the issue is "ripe" because it directly impacts the underlying tort litigation. Trejo correctly points out that it is common for a federal court to adjudicate, by way of declaratory judgment, an actual controversy pertaining to an insurance policy where the underlying action has not been resolved. *See Columbia Casualty Co. v. Georgia & Florida Railnet, Inc.*, 542 F.3d 106 (5th Cir. 2008); and *Allstate Ins. Co. v Melton*, 482 F.Supp.2d 775 (S.D. Miss. 2007).

**Standard of Review for Declaratory Judgment Action**

When considering a declaratory judgment action, a district court must engage in a three-step inquiry. *Orix Credit Alliance v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). First, the court must determine whether the declaratory action is justiciable, i.e. whether an actual controversy exists between the parties. *Id.* Second, if it has jurisdiction, the court must resolve whether it has the authority to grant declaratory relief in the case presented. *Id.* Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory action. *Id.*

The court's decision to entertain a declaratory judgment action pursuant to 28 U.S.C. § 2201 is discretionary. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983); *Employers' Liability Assur. Corp. v. Mitchell*, 211 F.2d 441, 443 (5th Cir. 1954). The Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a

new form of relief for qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Consistent with *Brillhart*, abstention from a declaratory judgment action is ordinarily appropriate when the state offers an adequate alternative forum in which to resolve the particular dispute. *Southwind Aviation v. Bergen Aviation*, 23 F.3d 948, 950 (5th Cir. 1994).

A district court may not dismiss a request for declaratory judgment relief "on the basis of a whim or personal disinclination." *Hollis v. Itawamba County Loans*, 657 F.2d 746, 750 (5th Cir. 1981). Rather, when deciding whether to dismiss a declaratory complaint, the factors that should be considered include, but are not limited to: (1) whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under applicable substantive law, can better be settled in the proceeding pending in state court; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in the state court proceeding; (3) whether necessary parties have been joined; and (4) whether such parties are amenable to process in that proceeding. *Brillhart*, 316 U.S. at 495.

The Supreme Court has held that where a state lawsuit pending in state court encompassed the same issues raised in a declaratory judgment action, the district court was within its discretion to dismiss the declaratory judgment action to avoid duplicative or parallel proceedings. *Wilton*, 515 U.S. at 280-81, 290. The Fifth Circuit has indicated that an additional relevant factor is whether the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum shopping. *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 96 (5th Cir. 1992); *Rowan Companies v. Griffin*, 876 F.2d 26, 29 (5th Cir. 1989).

The Fifth Circuit has expounded on the above factors and clarified them further. *See St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994); and *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774 (5th Cir. 1993). That court has indicated that the district court must consider these factors on the record before a discretionary, non-merits dismissal of a declaratory judgment action is appropriate. *See id.*

More recently, the Fifth Circuit in *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383 (5th Cir. 2003), itemized the seven factors from *Trejo, supra* in considering the third prong of the *Orix* analysis, i.e, whether to exercise its discretion to decide or dismiss a declaratory action. Those nonexclusive factors are: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *Sherwin-Williams*, 343 F.3d at 38-89.

**<u>Justiciable Controversy</u>**

C&I places much of its emphasis on the first prong of the *Orix* test, i.e., the justiciability of the controversy. In the declaratory judgment context, whether a particular dispute is ripe for adjudication turns on whether a substantial controversy of

sufficient immediacy and reality exists between the parties having adverse legal interests. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d at 896. "A Court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding Court consideration." *New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583, 586-587 (5th Cir. 1987).

C&I argues that there is no actual controversy involving it in the present action because there is no settlement between the plaintiff and the defendants. The plaintiff argues that the only reason there is no settlement is because C&I has taken the onerous position that the waiver of subrogation clause does not mean what it clearly says. Further, C&I asserts that it has not, in fact, asserted a claim for a setoff since there is no settlement and that it continues to pay medical benefits on behalf of the plaintiff, thus, there is no current issue involving C&I.

C&I cites to a number of federal and state cases regarding actual controversies or the lack thereof. The court finds that none of them are directly applicable to this factual situation. There is before the court a dispute about an insurance contract that is highly relevant to the issues in this litigation. Simply because there is no settlement yet, does not negate the existence of a real dispute. C&I has clearly conveyed its interpretation of the waiver of subrogation clause to the parties in this litigation. That interpretation has stopped the consummation of a settlement which involves C&I's insured (Precision) as well as Alter, who is listed in the Policy Schedule as one to whom the waiver of subrogation clause applies. Contrary to C&I's assertions, there can be no dispute that there is a justiciable issue or that the court has the authority to grant

declaratory relief if it chooses to exercise its discretion to do so.

**Exercise of Discretion to Decide or Dismiss**

An analysis of the *Sherwin-Williams* factors counsels the court to exercise that discretion in favor of deciding this matter: (1) there is no pending state action in which all of the matters in controversy may be fully litigated; (2) the plaintiff has not filed suit in anticipation of a lawsuit filed by the defendant; (3) the plaintiff has not engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums is not relevant; (5) the federal court is a convenient forum for the parties and witnesses; (6) retaining the lawsuit would serve the purposes of judicial economy; and (7) the federal court is not being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending, since there is no such proceeding.

**Waiver of Subrogation Clause**

There is a justiciable issue and the court will exercise its discretion to decide the issue in conformity with the prior analysis. That being said, the court is called upon to interpret the waiver of subrogation clause of the C&I Policy. In analyzing that clause, C&I attempts to draw a distinction between the right to seek reimbursement for past medical payments, which C&I terms "subrogation rights," and the "separate and distinct" right to seek setoff for future medical payments. The plaintiff argues that under Mississippi law, it is clear that a workers' compensation carrier's right to seek

reimbursement for past medical payments and right to seek a setoff for future medical payments are derived from a single statute, Miss. Code § 71-3-71. That sections provides, in pertinent part:

> The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in any such action or may intervene therein. If such employer or insurer join in such action, they shall be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action (after deducting the reasonable costs of collection) as hereinafter provided.
>
> The commencement of an action by an employee or his dependents (or legal representative) against a third party for damages by reason of the injury, or the adjustment of any such claim, shall not affect the right of the injured employee or his dependents (or legal representative) to recover compensation, but any amount recovered by the injured employee or his dependents (or legal representative) from a third party shall be applied as follows: reasonable costs of collection as approved and allowed by the court in which such action is pending, or by the commission of this state in case of settlement without suit, shall be deducted; the remainder, or so much thereof as is necessary, shall be used to discharge the legal liability of the employer or insurer; and any excess shall belong to the injured employee or his dependents. The employee or his dependents bringing suit against the third party must notify the employer or carrier within fifteen days of the filing of such suit.
>
> An employer or compensation insurer who shall have paid compensation benefits under this chapter for the injury or death of the employee shall have the right to maintain an action at law against any other party responsible for such injury or death, in the name of such injured employee or his beneficiaries, or in the name of such employer or insurer, or any or all of them. If reasonable notice and opportunity to be represented in such action by counsel shall have been given to the compensation beneficiary, all claims of such compensation beneficiary shall be determined in such action, as well as the claim of the employer or insurer. If recovery shall be had against such other party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount recovered over and above the amount that the employer and insurer shall have paid or are liable for in compensation or other benefits, after deducting the reasonable costs of

collection

Miss. Code Ann. § 71-3-71 (Supp. 2009).

The statute does not reference the term "subrogation" anywhere in it. However, according to the plaintiff, the Mississippi Supreme Court has referred collectively to the rights springing from § 71-3-71, i.e., the right to seek reimbursement for past medical payments, and the right to seek a credit or setoff for future medical payments, as "subrogation rights." *See Richardson v. United States Fidelity & Guarantee Co.*, 102 So.2d 368 (Miss. 1958). In *Richardson*, the plaintiff contends that the court specifically addressed the right of setoff for future medical payments, stating:

> The express provisions of the Act provide for the use of net proceeds of the collection from the third-party wrongdoer to discharge the liability of the employer or insurer, and there is no implication that such proceeds should be used to discharge only that part of the liability of the employer or insurer which has been paid or accrued at the time of the collection of such proceeds, and there is no rational basis for limiting the subrogation rights of the employer and the insurer to reimbursement of the amount paid or accrued prior to collection of the proceeds of the suit from the third party.

102 So.2d at 370.

C&I argues that the plaintiff's interpretation of *Richardson* is simply wrong in that the court did not interpret the relevant portion of the Workers' Compensation Act to mean the right to a credit/setoff and reimbursement arise from the carrier's statutory right of subrogation. C&I argues that the Act gives the employer/carrier both: (a) the right to recover the amount that the employer/carrier shall have paid: and/or (b) are liable for in compensation or other benefits.

However, the plaintiff points to *Federated Mut. Ins. Co. v. McNeal*, 943 So.2d 658, 661 (Miss. 2006), where the court stated: "Federated's subrogation rights do not

-14-

spring from a contractual agreement as in *Hare*, but rather are conferred by Section 71-3-71." Thus, under Mississippi law, the "subrogation rights" of a workers' compensation carrier are defined by Section 71-3-71, and includes both the right to seek reimbursement for past medicals and the right to seek a setoff for future medicals. C&I's attempt to narrow the definition of "subrogation rights" to encompass only the right to seek reimbursement for past medical payments is contrary to the wording of the statute.

The Mississippi cases cited by C&I in support of its argument that "waiver by an insurance company of subrogation rights does not result in a waiver of the rights to credit," involve uninsured motorist ("UM") coverage. The rights and duties of insureds and insurers in the context of UM coverage are delineated by a separate statutory scheme codified at Miss. Code § 83-11-101, *et seq*. The UM statutory scheme bears no similarities to Mississippi's Workers' Compensation scheme.

Further, C&I fails to acknowledge that the UM policies at issue contain express offset clauses that provide to the insurer the right to take a credit in the amount of proceeds paid by another carrier. *See USF&G v. Ferguson*, 698 So.2d 77, 81-82 (Miss. 1997) (relying on the "offset clause" contained in the insured's UM policy to support its conclusion that the trial court erred "in refusing to allow a $25,000 credit in favor of USF&G for the amount that [the insured] recovered [from the tortfeasor's insurer]"); *Lee v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2900014, *4 (S.D. Miss. 2009) (holding that the language of the State Farm policies clearly indicate that State Farm's policy limits are $75,000; that State Farm is entitled to an offset of $25,000 for the Kelly settlement; and that State Farm has tendered the amount of its obligation of $50,000 to plaintiff.).

These cases are decided pursuant to the terms of the UM policies at issue, and not as a matter of Mississippi statutory or common law. The C&I policy at issue does not contain express language permitting it to take a setoff or credit for monies paid to a beneficiary in connection with the settlement of a claim against a third-party tortfeasor. To the contrary, the policy at issue contains an express waiver by C&I of its subrogation rights with respect to Alter. Thus, C&I's argument finds no support in the UM cases cited.

Nevertheless, C&I continues to argue that the right to setoff is separate and distinct from it right to recover past payments. C&I points out that Precision entered into an Independent Contractor Agreement with Alter and that the Agreement included a provision requiring Precision to have workers' compensation insurance with the waiver of subrogation in favor of Alter. C&I admits that this provision required Precision to agree to waive its statutory right to seek subrogation from Alter in the event Alter was ever found to be the third party actually responsible for the injury of one of Precision's employees. C&I also points out that this was intended to prevent Precision, or the workers' compensation carrier, from seeking reimbursement from Alter for an injury to one of Precision's workers which occurred while working for Alter pursuant to the Agreement. Ultimately, C&I also acknowledges that this provision was intended to benefit Alter and to prevent Precision and C&I from seeking reimbursement from Alter.

What is incongruous from this argument is the fact that the proposed settlement is from Precision and Alter for the benefit of the plaintiff. If C&I is entitled to a setoff, ultimately it would be as a result of a payment by or on behalf of Alter and/or Precision to which C&I has waived its right to seek. If the benefits had already been paid as

medical payments, they would not be recoverable. It seems anomalous that C&I is arguing for an interpretation of the waiver of subrogation clause which creates such an incongruous result.

There are no Mississippi cases directly on point that offer clear guidance to the court. The plaintiff points to Texas, which in deciding the same issue presented by the instant motion, the Texas Court of Appeals concluded that a workers' compensation carrier's "waiver of its subrogation rights waives its right to reimbursement and its right to future credits." *Hartford Accident & Indem. Co. v. Buckland*, 882 S.W.2d 440, 445 (Tex. Ct. App. 1994; *see also American Risk Funding Ins. Co. v. Lambert*, 59 S.W.3d 254, 259 (Tex. Ct. App. 2001)("A waiver of a carrier's subrogation rights waives its right to reimbursement and its right to future credit.").

C&I correctly points out that *Buckland* made a leap in deciding the issue before it based on the cases it cited in support of its decisions. This may be true, but *Buckland* clearly supports the plaintiff's argument. If the Texas court got it wrong, that is an issue for Texas. However, an analysis of *Buckland* leads this court to the conclusion that it is more analogous than any of the cases cited by C&I.

Regardless, a plain reading of the waiver of subrogation leads the court to the inescapable conclusion that it is crystal clear on its face. It says "We have the right to recover our payments from anyone liable for any injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule." Any payment in settlement of this claim by Precision and/or Alter is a "payment[] from anyone liable for any injury covered by this policy." When C&I agreed that "[w]e will not enforce our right against the person or organization named in the Schedule," any right

to seek reimbursement or setoff from payments to an injured employee as to any money paid by or on behalf of one of those scheduled entities was waived.

The court finds that the waiver of subrogation clause in the Policy is clear and unambiguous. It waives C&I's right to seek reimbursement or setoff resulting from any payment by a scheduled entity on behalf of an injured employee subject to the Agreement and Policy. In this case, C&I has waived the right to a setoff against any settlement paid by or on behalf of Precision and/or Alter to or for the benefit of Alfonso Trejo.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to for Summary Judgment **[#110]** filed on behalf of the plaintiff is granted and he is entitled to a declaratory judgment on Count II of the Second Amended Complaint that C&I has waived the right to reimbursement for past medical benefits paid and the right to a setoff against any settlement paid by or on behalf of Precision and/or Alter to or for the benefit of Alfonso Trejo.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion to Dismiss the Second Amended Complaint **[#117]** filed on behalf of defendant Commerce and Industry Insurance Company is denied.

SO ORDERED AND ADJUDGED this the 13th day of July, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE